**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings | ) ) ) ) | Case No. 14 C 1748 MDL No. 2545 |
| This document applies to Case Nos.: 14 C 4256, 14 C 4527, 14 C 8927, 14 C 9141, 14 C 10137, 15 C 3512, 15 C 3823, 15 C 3858, 15 C 5819, 15 C 6327, 15 C 6330, 15 C 7412, 15 C 7423, 15 C 7445, 15 C 7494, 15 C 7569, 15 C 7589, 15 C 7956, 15 C 10379, 16 C 0298, 16 C 1834, 16 C 2206, 16 C 2369, 16 C 2657, 16 C 2703, 16 C 2987, 16 C 2993, 16 C 4407, 16 C 6440, 16 C 7172, 16 C 7230, 16 C 8319, 16 C 10185, 16 C 11267, 17 C 0727, 17 C 1188, 17 C 1778, 17 C 4099, 17 C 7522 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

**CASE MANAGEMENT ORDER NO. 140**
(Memorandum Opinion and Order on thirty-nine plaintiffs' motions for relief from <u>dismissals with prejudice pursuant to Case Management Order No. 118</u>)

MATTHEW F. KENNELLY, District Judge:

Plaintiffs in this multidistrict litigation (MDL) proceeding allege that they suffered either arterial cardiovascular injuries or injuries related to blood clots in the veins as a result of taking prescription testosterone replacement therapy (TRT) drugs. Defendants—AbbVie, Inc., Actavis, Inc., Auxilium Pharmaceuticals, Inc., Eli Lilly & Company, Endo Pharmaceuticals, Inc., GlaxoSmithKline, LLC, and affiliated entities— are manufacturers of TRT drugs. More than 7,800 individual cases have been filed in the MDL, and a little under 6,000 remain pending.

On May 11, 2018, the Court dismissed more than 150 cases with prejudice after plaintiffs in those cases failed to (1) comply with a case management order setting forth

certain discovery obligations and (2) respond to an order to show cause why their cases should not be dismissed with prejudice due to the noncompliance. Thirty-nine plaintiffs have filed motions for relief from that order and have asked the Court to reinstate their cases. For the following reasons, the Court grants thirty-seven plaintiffs' motions and denies two.

**Background**

Case Management Order No. 9 (CMO 9), which has been in effect since October 2014, requires all plaintiffs in the MDL to, among other things, complete a plaintiff fact sheet (PFS), serve it on defendants, produce to defendants all responsive, non-privileged documents in their possession that the PFS requests, and provide executed authorizations for the release of certain medical records. The PFS requests information that is highly relevant to the resolution of a plaintiff's claims, such as identification of TRT products the plaintiff used, the plaintiff's prescribing physicians, the pharmacies that dispensed plaintiff's TRT products, dispensation dates, plaintiff's medical history, records regarding the specific injury or injuries plaintiff allegedly suffered as a result of using TRT products, and details regarding whether and when plaintiff saw, heard, or read TRT-related advertisements or other information.

In December 2017, the Court issued Case Management Order No. 85 (CMO 85), which required all plaintiffs in the MDL to supplement and update their PFS with a submission called a supplemental plaintiff profile form (PPF). The PPF requires disclosure of, among other things, detailed information regarding, among other things, the particular TRT product(s) the plaintiff used; the pharmacy or pharmacies from which the plaintiff obtained it; the dates of usage; any gaps in usage; the nature and date of

the plaintiff's injury claimed to be caused by a TRT product; details regarding written product information the plaintiff received; and details regarding TRT advertisements the plaintiff saw.  In addition, the PPF requires the plaintiff to produce relevant records, including pharmacy records, regarding the dispensation to and use by the plaintiff of any TRT product and medical records documenting the plaintiff's claimed TRT-related injuries.  The Court imposed the requirement for submission of a PPF to ensure the disclosure of relevant information needed for the preparation and litigation of the thousands of cases remaining in the MDL, as well as their ultimate resolution by settlement, ruling on a dispositive motion, remand to the appropriate transferor district, or trial before this Court.

CMO 85 gave each plaintiff a reasonable time—90 days—to submit a substantially complete PPF.  CMO 85 further provided as follows:

> C. Should any Plaintiff fail to serve an executed PPF or if a Defendant deems a Plaintiff's PPF deficient, Defendant's counsel shall notify the Court of the alleged deficiency and the Court shall issue an "Order To Show Cause Why the Case Should Not Be Dismissed and/or Sanctions Ordered."  Plaintiff's counsel shall have twenty-one (21) days to respond to said Order To Show Cause, which includes the ability to cure the alleged discovery deficiency.  There shall be no imposition of a sanction for any plaintiff who cures a deficiency following issuance of an Order to Show Cause.
>
> D. If the Plaintiff fails to show cause within 21 days of entry of the Court's Order To Show Cause, the Court may dismiss the Plaintiff's case with prejudice, or impose another appropriate sanction.

CMO 85, ¶ III.B-C.

On May 11, 2018, the Court dismissed more than 150 cases with prejudice after defendants identified PPF deficiencies in those cases; the Court issued a show-cause order to those plaintiffs as provided in CMO 85; and the plaintiffs failed to provide any

3

response whatsoever to the show-cause order by the specified deadline. *See* CMO 118 at 1-3. The Court entered judgment of dismissal with prejudice in those cases on May 14, 2018. Thirty-six plaintiffs filed motions for relief from the Court's order within twenty-eight days after the entry of judgment, most of them immediately after entry of judgment. The Court held a hearing on those motions on May 31, 2018. Three plaintiffs filed motions for relief after the hearing and more than twenty-eight days after the entry of judgment.

## Legal Standards

"[W]hether a motion filed within [twenty-eight] days of the entry of judgment should be analyzed under Rule 59(e) or Rule 60(b) depends on the *substance* of the motion, not on the timing or label affixed to it." *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). "When the substance and label of a post-judgment motion filed within [twenty-eight] days of judgment are not in accord, district courts should evaluate it 'based on the reasons expressed by the movant.'" *Id.* (quoting *Jennings v. Rivers*, 394 F.3d 850, 855 (10th Cir. 2005)); *see also Ho v. Taflove*, 648 F.3d 489, 495 n.5 (7th Cir. 2011) (construing motion styled under Rule 60(b) as a Rule 59(e) motion because "the substance of the motion"—including that plaintiff sought reconsideration in part due to errors of law—"reveals that it is a Rule 59(e) motion," and because it was filed within the time allowed under Rule 59(e)); *Robinson v. Bandy*, 524 F. App'x 302, 304 (7th Cir. 2013).

On the other hand, "[w]hen a motion is filed more than 28 days after the entry of judgment, whether the movant calls it a Rule 59(e) motion or a Rule 60(b) motion," a

court "treat[s] it as a Rule 60(b) motion." *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014).

A. **Federal Rule of Civil Procedure 59(e)**

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). "Courts may grant Rule 59(e) motions to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (internal quotation marks omitted). Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Id.* (internal quotation marks omitted).

B. **Federal Rule of Civil Procedure 60(b)**

Federal Rule of Civil Procedure 60(b) "delineates six grounds upon which relief from a judgment can be granted," including "(1) mistake, inadvertence, surprise, or excusable neglect" and "(6) any other reason that justifies relief." *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018); Fed. R. Civ. P. 60(b)(1), (6). "Rule 60 relief is limited to 'extraordinary' situations where a judgment is the inadvertent product of special circumstances and not merely [the] erroneous application[] of law." *Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (internal quotation marks omitted).

For purposes of Rule 60(b)(1), the Seventh Circuit applies the Supreme Court's *Pioneer* factors in determining whether neglect (which can include negligence) is "excusable." *Moje v. Fed. Hockey League*, 792 F.3d 756, 759 (7th Cir. 2015). The determination whether neglect is excusable

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [opponent], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)).

To obtain relief under Rule 60(b)(1), "a litigant must show that both its own conduct and its lawyer's fit the category of 'excusable' neglect." *Moje*, 792 F.3d at 758. In other words, "a lawyer's errors are imputed to the client." *Id.*

Rules 60(b)(1) and (6) "are mutually exclusive—Rule 60(b)(6), as a residual catchall, applies only if the other specifically enumerated rules do not." *Pearson*, 893 F.3d at 984. A motion for relief under Rule 60(b)(6) "must be made 'within a reasonable time.'" *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) (quoting Fed. R. Civ. P. 60(c)(1)). A court "may consider a wide range of factors" to determine whether "extraordinary circumstances" warrant relief under Rule 60(b)(6), including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)).

## Discussion
### A. Joint motions

Plaintiffs Lloyd Bailey, Odis Price, Nicholas Wisdom, and Larry and Yvonne Starnes have filed joint motions with defendants for relief from CMO 118. In short, defendants mistakenly identified Bailey, Price, Wisdom, and Starnes as plaintiffs who had failed to comply with CMO 85 and CMO 110. The Court grants the parties' joint motions for relief and reinstates these plaintiffs' cases.

### B. Plaintiffs Paul and Dennise Ziaja

Plaintiffs Paul and Dennise Ziaja (Ziaja) timely submitted a PPF to the Lilly defendants, who neither identified a deficiency in Ziaja's PPF nor requested that the Court dismiss Ziaja's case. Ziaja, however, did not submit a PPF to the Actavis defendants and did respond to the show-cause order regarding that deficiency. Defendants, therefore, identified Ziaja as a plaintiff who had failed to comply with CMO 85 and CMO 110, and the Court dismissed Ziaja's action against all defendants with prejudice. Ziaja has asked the Court to reinstate the case only against the Lilly defendants. The Lilly defendants did not appear at the May 31, 2018 hearing, but according to Ziaja's counsel, Lilly has stated that it "would not object" to this request. May 31, 2018 Hrg. Tr. at 75:11-20. Accordingly, the Court grants Ziaja's motion for relief from CMO 118 and reinstates his case only against the Lilly defendants.[1]

### C. Other motions filed within twenty-eight days after entry of judgment

Many plaintiffs filed their motions for relief within twenty-eight days after the Court entered judgment on CMO 118. Most of them cite Rules 60(b)(1) and (6) as the only federal rules providing a basis for relief. Two plaintiffs cite Rule 59(e) as well, but in substance, their motions are nearly identical to those that cite only Rules 60(b)(1) and (6). All of these plaintiffs advance three primary arguments: (1) dismissal is too harsh a sanction for their noncompliance with CMO 85 and CMO 110, (2) their noncompliance constitutes "excusable neglect," and (3) defendants have not suffered prejudice because of their quick cure of alleged deficiencies and, primarily, because they had

---

[1] AbbVie, Actavis, Auxilium, Endo, and GSK list Ziaja's motion among those they oppose. See Defs.' Omnibus Opp., Ex. A. But Ziaja asserts claims only against the Lilly and Actavis defendants, and the Court's order renders the Actavis defendants' opposition moot.

already provided the same information to defendants with their timely-served PFSs.

Plaintiffs' argument that dismissal is too harsh a sanction is one regarding an alleged error of law or fact, and plaintiffs filed their motions within the time allowed under Rule 59(e). Accordingly, the Court construes plaintiffs' motions as seeking relief under Rule 59(e), *see Ho*, 648 F.3d at 495 n.5, *Obriecht*, 517 F.3d at 493, and concludes that plaintiffs have "point[ed] to evidence in the record that clearly establishes a manifest error of . . . fact." *Miller*, 683 F.3d at 813. Specifically, at the time of the dismissals, the Court did not fully appreciate that the PPF process essentially required plaintiffs to resubmit information they had already served. Attorney argument during the hearing on May 31, 2018 revealed that the PPF process had operated in this manner. The Court notes that some plaintiffs made slight changes to the information they had previously provided, such as by adding addresses of pharmacies previously named, adding specificity to prescription dates previously provided, or retracting a statement regarding reliance on certain TRT-related literature. But the Court does not consider these changes to be material. Four other plaintiffs provided supplemental records with their PPFs. Because neither plaintiffs nor defendants described the supplemental records with sufficient specificity, however, the Court cannot determine whether they contain new, material information or are more like the aforementioned, inconsequential changes to PPFs. *See* Arthur Lapenotiere Supp. Mot. (Case No. 16 C 1834, Dkt. No. 16) ¶ 6; AbbVie Opp. to Lapenotiere Mot. (Case No. 16 C 1834, Dkt. No. 18) at 1, 3; May 31, 2018 Hrg. Tr. at 59:14-21, 61:8-12, 65:12-16 (attorney argument regarding plaintiffs James and Gloria Million, John and Patricia Rivera, and Robert and Helen

Williams).[2]

Defendants oppose plaintiffs' motions for relief and argued at the May 31, 2018 hearing that they will suffer prejudice if the Court reinstates the cases. With the caveats just discussed, however, defendants already had the requested information for these plaintiffs. Plaintiffs' delay in serving the same information again did not impede defendants in the least in developing litigation strategy. Even if, as AbbVie argued at the hearing, plaintiffs' delay allowed them to "escape[] scrutiny and possible selection [for bellwether] trial group 3," May 31, 2018 Hrg. Tr. at 69:3-4, the same would have been true of plaintiffs who cured their PPF deficiencies within twenty-one days of the show-cause order. Yet under the terms of that order (CMO 110), the Court would not have dismissed those plaintiffs' cases. *See id.* at 69:6-25. Defendants also rely on *Dzik v. Bayer Corp.*, 846 F.3d 211 (7th Cir. 2017), for the proposition that the Court was well within its discretion to dismiss plaintiffs' cases for noncompliance with CMO 85 and CMO 110. *See* Defs.' Omnibus Opp. at 4. In *Dzik*, the Seventh Circuit stated, among other things, that "[d]istrict courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency." 846 F.3d at 216 (quoting *In re Asbestos Prods. Liab. Litig. (No VI)*, 718 F.3d 236, 243, 246-48 (3d

---

[2] Plaintiff Arthur Lapenotiere provided "additional records" on May 14, 2018. Lapenotiere Supp. Mot. ¶ 6. At the May 31, 2018 hearing, Lapenotiere's counsel moved to withdraw the motion for relief from CMO 118 because he had been unable to locate pharmacy records "that would prove causation." May 31, 2018 Hrg. Tr. at 6:17-20. But he had also been unable to reach Lapenotiere for permission to withdraw the motion. *Id.* at 8:1-6. In June 2018, Lapenotiere informed counsel that he wanted to continue with his case. *See* Lapenotiere Second Supp. Mot. (Case No. 16 C 1834, Dkt. No. 17) ¶ 8. AbbVie argues that the Court should not reinstate Lapenotiere's case because, among other things, the additional records provided on May 14, 2018 do "not include proof of dispensation." AbbVie Opp. to Lapenotiere Mot. at 1, 3. Assuming AbbVie is correctly characterizing the records, they do not contain information AbbVie did not already know.

Cir. 2013)). The Court certainly agrees with this proposition. But nothing in *Dzik* indicates that a district court presiding over an MDL lacks discretion to reinstate cases under Rule 59(e). For all of these reasons, in order to correct the Court's "own error[] and thus avoid unnecessary appellate procedures," *Miller*, 683 F.3d at 813, the Court grants the following plaintiffs' motions for relief and reinstates their cases:

Peter Catanese (15 C 7494)
Charles Deming (17 C 0727)[3]
Joseph Diani (16 C 7172)
Douglas Hele (15 C 7589)
Sandor and Gail Horky (15 C 7445)
Carlos and Kathleen Iglesias (15 C 6327)
Richard and Sandra Jepson (16 C 8319)
Ronnie Kennedy (15 C 3512)
Arthur Lapenotiere (16 C 1834)
Robert and Jennifer Lewis (15 C 7412)
Donald Linn (14 C 4527)
Santo and Sharon LoCoco (14 C 4256)
Joseph McCabe (16 C 2369)
Robert McCullough (15 C 3823)
James and Gloria Million (17 C 1188)
Marc Moskowitz (15 C 7956)
Sushma Narula (17 C 7522)
Bruce Owens (16 C 4407)
Fred Paige (15 C 5819)
Joann Parrish (16 C 2206)
Michael Pruitt (15 C 7569)
Martin and Patricia Ramos (15 C 6330)
John and Patricia Rivera (16 C 6440)
Richard Ross (16 C 11267)
Paul and Linda Saxon (15 C 7423)
Henry and Deborah Schwartz (16 C 2703)
George and Charlene Stroemer (16 C 2993)
Thaddeus Thompson (16 C 7230)
Ronald and Alexandra Vigue (15 C 10379)
Ruth Plenty Walls (16 C 2987)
Robert and Helen Williams (17 C 4099)

---

[3] At the May 31, 2018 hearing, plaintiff Charles Deming conceded that the Court should not reinstate his claims against AbbVie Products LLC because it is a non-diverse defendant. *See* May 31, 2018 Hrg. Tr. at 24:13-25:1.

D.     **Motions filed more than twenty-eight days after entry of judgment**

    1.     **Dustin Saunders and Felix Levya**

Plaintiffs Dustin Saunders and Felix Levya filed their motions more than twenty-eight days after the Court entered judgment on CMO 118—on August 17, 2018 and September 7, 2018, respectively. Accordingly, the Court must construe the motions as seeking relief under Rule 60(b). See Banks, 750 F.3d at 666.

Saunders and Levya invoke Rules 60(b)(1) and (6) as grounds for relief. With respect to Rule 60(b)(1), they suggest that their attorney's delay in discovering CMO 85 and CMO 110 constitutes excusable neglect. They state, for example, that the attorney did not update ECF notifications to reflect personnel changes in his office; neither the Plaintiffs' Steering Committee nor defendants notified the attorney that they had not received plaintiffs' PPFs; and defendants did not attempt to meet and confer with the attorney before moving to dismiss plaintiffs' cases. These arguments lack merit. Failure to check the docket or to update one's ECF notifications is not "excusable neglect" for an attorney, and no attorney could reasonably have believed that the MDL was completely inactive. See, e.g., Dzik, 846 F.3d at 216 ("[A]ttorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant."); Thomas v. Bridgeview Bank Grp., 716 F. App'x 537, 538 (7th Cir. 2018) ("Failure to check one's email is 'neglect,' but it is not 'excusable.'"); see also Acosta v. DT&C Management, LLC, 874 F.3d 557, 559-61 (7th Cir. 2017); Moje, 792 F.3d at 759. Nor were defendants required to confer with plaintiffs having deficiencies before seeking dismissal.

Other *Pioneer* factors—the length of plaintiffs' delay, the reasons for the delay, and whether plaintiffs acted in good faith—also weigh against granting Rule 60(b)(1) relief due to "excusable neglect." Notably, Saunders and Levya ignore the fact that they waited approximately three and four months longer than the other plaintiffs to file their motions for relief. Their failure to address this issue casts doubt on their statements that "[a]s soon as Plaintiff's counsel became aware of this unfortunate set of circumstances he obtained a completed PPF . . . and served it on defense[.]" Saunders Mot. at 2; Levya Mot. at 2. Their delay also suggests that, unlike the other plaintiffs, they were inattentive not only to the master docket, but also to their individual dockets. Accordingly, the Court denies Saunders and Levya's motions for relief under Rule 60(b)(1). The Court likewise denies their motions for relief under Rule 60(b)(6). Saunders and Levya do not explicitly distinguish between their Rule 60(b)(1) and 60(b)(6) arguments, but the Court interprets their motions as contending that the practical effect of the PPF requirement—forcing plaintiffs to submit "the same thing twice," Saunders Mot. at 2-3; Levya Mot. at 2-3—is an "other reason" justifying relief under Rule 60(b)(6). Saunders and Levya, however, could have recognized this issue, cured their PPF deficiencies, and filed their motions for relief in May 2018, as did the plaintiffs discussed in section C of this order. Instead, they waited months longer. The Court has "wide discretion" to determine whether it will reopen a case under Rule 60(b). *Buck*, 137 S. Ct. at 777. Here, the Court finds that Saunders and Levya failed to exercise due diligence and did not seek relief "within a reasonable time," as required for a Rule 60(b)(6) motion. Fed. R. Civ. P. 60(c)(1). In addition, granting their motions would invite other plaintiffs to move for relief under CMO 118 even now. Additional

motions for reinstatement at this stage of the proceedings would present a "risk of injustice to the parties" by injecting uncertainty into the settlement process, which is dependent on the parties' understanding of the maximum universe of potential claims. *Buck*, 137 S. Ct. at 778. For these reasons, the Court declines to reinstate Saunders and Levya's cases under Rule 60(b)(6).

### 2. Alan Leschyshyn

Plaintiff Alan Leschyshyn is an incarcerated *pro se* litigant. He mailed a response to the show-cause order (CMO 110) on or around June 22, 2018. In that response, he also seeks relief from CMO 118. Leschyshyn mailed two other motions, in which he again seeks relief from dismissal, on July 16, 2018 and October 2, 2018. Leschyshyn argues, among other things, that his neglect in complying with CMO 85 and CMO 110 is excusable because he cannot directly access PACER from prison and must instead obtain updates through a third-party service. He further argues that he has limited funds to pay for the third-party service.

Leschyshyn's lack of PACER access appears to have been the main reason for his delay in responding to CMO 85, CMO 110, and the judgment of dismissal. And although Leschyshyn, like Saunders and Levya, took longer than the other plaintiffs to respond to these orders, his circumstances differ in a key respect: the ability to access PACER is not within Leschyshyn's control. *See Moje*, 792 F.3d at 759. Moreover, there is no evidence that he acted in bad faith. *See id.* The Court therefore concludes that Leschyshyn's neglect is excusable, grants his motion, and reinstates his case. The Court is cognizant of AbbVie's assertion that Leschyshyn's PPF remains deficient, but

13

that is a merits issue that the parties can and should address during the settlement process.

**E.     Attorneys' fees and costs**

AbbVie, Endo, Auxilium, GSK, and Actavis request that if the Court reinstates any of plaintiffs' cases, the Court "condition reinstatement on plaintiffs paying Defendants' fees and costs incurred in identifying plaintiffs as having violated CMO 85 and the Order to Show Cause, and the fees and costs incurred in preparing this Opposition."  Defs.' Omnibus Opp. at 4 n.4 (citing Fed. R. Civ. P. 37(b)(2)(C)).  The Court denies defendants' request because (1) defendants made several mistakes in identifying PPF deficiencies, and (2) plaintiffs and defendants are jointly responsible for creating the PFS and PPF processes that triggered this sequence of events.

**Conclusion**

For the foregoing reasons, the Court grants the following motions for relief [Case No. 14 C 1748, dkt. nos. 2641, 2657, 2665] [Case No. 15 C 3858, dkt. nos. 17, 18] [Case No. 14 C 1748, dkt. no 2664] [Case No. 16 C 0298, dkt. no. 19] [Case No. 14 C 1748, dkt. nos. 2613, 2614, 2615, 2616, 2617, 2618, 2619, 2620, 2622, 2623, 2624, 2627, 2629, 2634, 2642, 2646, 2647, 2648, 2649, 2655, 2676, 2677, 2683, 2684, 2685, 2772, 2799] [Case No. 16 C 2369, dkt. no. 5] [Case No. 16 C 7230, dkt. no. 5] [Case No. 17 C 0727, dkt. no. 10] [Case No. 16 C 7172, dkt. no. 5] [Case No. 16 C 8319, dkt. no. 6] [Case No. 17 C 7522, dkt. no. 6] [Case No. 15 C 6330, dkt. no. 6] [Case No. 16 C 2987, dkt. no 13] [Case No. 16 C 2703, dkt. no. 13] [Case No. 16 C 2993, dkt. no. 13] [Case No. 16 C 2206, dkt. no. 13] [Case No. 16 C 1834, dkt. nos. 14, 16, 17] [Case No. 16 C 6440, dkt. no. 8] [Case No. 17 C 4099, dkt. no. 8]  [Case No. 17 C 1778, dkt. nos.

17, 18, 20, 21]. The Court denies the following motions for relief: [Case No. 16 C 2657, dkt. no. 6] [Case No. 16 C 10185, dkt. no. 6].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 15, 2018